Thank you. As you know, my name is David Ness, and I represent the petitioner in this case, Mr. Richard Shreves. Mr. Shreves filed a pro se habeas petition challenging his state court conviction, raising a number of issues, including issues of his mental competence and the adequacy of his court-appointed counsel. The issue on appeal here is whether the district court properly dismissed that petition on the merits without requiring a response from the state or reviewing the state court record. There were, obviously, some problems with Mr. Shreves' petition. Nevertheless, as pointed out in the briefs, the petition was not so palpably frivolous or inherently incredible so as to justify the district court's action in summarily dismissing it. There were a number of issues raised in the briefs, and I think with the help of counsel and my ability to review the record, I pointed out a number of questions that I think were either not addressed by the district court or misunderstood, perhaps, by the district court. But those have to be tied to something that was in the petition that would raise at least a colorable claim, right? Certainly. The petition at the outset has to raise a colorable claim. So could we turn to the petition, and maybe you could show us in the petition where a colorable claim was raised? Well, I think there's certainly a colorable claim in Mr. Shreves' raised issues as to his competency to proceed to trial. Well, but you can't just say I was incompetent. There has to be some specificity regarding how that was manifested, doesn't there? In order for it to raise at least a colorable claim that the district court judge should have noticed something or his counsel should have brought something to the attention of the judge, what was in the petition in terms of specificity that would support the argument that either the attorney should have raised competency or the judge should have sua sponte recognized that there was an issue? In the petition. Are you including in the petition his exhibits that he submitted with the petition that included the Warm Springs report and things of that nature? Well, whatever you think was in the petition that would raise a colorable claim of competency, could you point us to it? Well, in the petition he presented historical evidence showing that he had been declared incompetent by the state of Idaho. He had been committed to the Montana State Hospital. He was treated successfully? He was treated successfully by Warm Springs, released I believe it was four or five months before his trial in Montana State. The petition is admittedly inconsistent with whether or not he was on medication at the time of his trial. Some portions of the petition indicates that he was on medication and the medication interfered with his ability to assist with his trial, assist his counsel. Other portions of the petition seem to indicate that he wasn't on medication. He stated in general terms, as I said, he was unable to assist with his counsel, unable to pay attention during trial, unable to assist during the trial. I guess that's the best I can do. Well, it was a pro-state petition, Your Honor, and so he is held to lesser pleading standards than if he had the assistance of counsel. Well, at ER Volume 2, pages 105 and 106, he does specifically say that counsel was ineffective for failing to obtain additional medical reports at a minimum to enter into mitigation, if not a full defense to the crime. And that he should have investigated the medications and their effect. So it seems like that it's there, whether it requires a remand is another question. I think certainly he, certainly in general terms, he brought out the fact that he was not on medication. He stressed that there were problems during the trial and that his counsel was ineffective for failing to, as a state, obtain the additional medical records. And that, of course, leads to questions dealing with another sub-issue, and that is, what other medical records were there? The district court assumed that there were no other records. However, as I pointed out in the briefing, there's indications otherwise that he was sent to the state hospital for treatment. He was also in Orofino, Idaho after his Idaho trial was interrupted. So I think that there are certainly questions here that can and should have been answered with a review of the record and requiring a response from the state before the petition is properly dismissed on the merits. I don't know if there's any other further questions. If not, I'll just reserve my time. You may do that. You have about four minutes for rebuttal, if you'd like it. May it please the Court, my name is Mardell Ployhauer. I'm the counsel for the state of Montana. The district court correctly determined that none of Shreve's claims presents a real possibility of constitutional error and correctly dismissed his federal habeas petition under Rule 4. I'll first begin by addressing the claim regarding, the ineffective assistance of counsel claim regarding his mental health records in Idaho. That seems to be the strongest potential claim, just speaking for myself. And it does seem from the petition and the exhibits, particularly, I think it's E, I'm not sure, I'd have to check. This guy was pretty crazy in common part ones. And it seems to me that without examining the trial court record from the state court without getting an answer, it seems to me a bit of a rush to judgment to say that we know for sure that there was no ineffective assistance because we know for sure that nothing more should have or could have been done with regard to his mental state. And, you know, I guess I'm concerned about the absence of the state trial court record and the answer. It doesn't mean that necessarily he would win, but it seems like he got kind of cut off a little bit early on that claim. Well, as the district court, the district court concluded that Shreve's own exhibits demonstrate that there were no Idaho mental health records. And that was based on a letter submitted by one of the psychiatrists who examined him. Mr. Shreve was, he was tried on May 1st, the trial began for him in Idaho on a robbery charge. And that trial was stopped midway through because of his problems that he was having in the jail during the lunch break. And two psychiatrists spoke to him at that time and briefly interviewed him and reported orally to the court, indicating that the trial should not proceed at that time. In the exhibits that Mr. Shreve's attached to his petition, they stated that they did not produce any written records. And the district court clerk there indicated that they did not have any written records. But I guess the bigger concern for me isn't necessarily even the records, but why wouldn't it be important for the court to have looked at the state trial record to determine whether there was something obvious in it that demonstrated either the mental state of Mr. Shreve's or the performance, good or bad, of his counsel with respect to his mental health? And what is the record that the district court did have indicates that when Mr. Shreve's exhibited problems, mental health problems, in May, his counsel took appropriate action and requested that he be examined and treated by the Montana State Hospital. The district court ordered that he be examined by the hospital. He was sent there. He was there approximately two months. While he was there, he was treated and examined. And in the exhibits that he attached to his petition, the psychiatrists from the Montana State Hospital, they acknowledged that he did have competency problems when he initially came there. He was there in June of 2000, but he responded very well to the medications that he was given. And with the help of medications, he was able to regain his competency. And then he stopped taking the medications in mid-July while he was in the hospital, and he continued to be competent, and he was released from the hospital in June of 2000. And he was released from the hospital in June of 2000 until August 2nd. And in the report, the psychiatrists explained that he, at that point, there was no indication of any problems with his competency, and he seemed to have no problems. And then in his petition, he does not allege that he exhibited any behavior after his release from the Montana State Hospital that would give the district court some reason to doubt his competency. And he continued to be incarcerated in the jail, and he testified during the trial, and he has not alleged that he exhibited any behavior during this time that would give anybody concern to doubt his competency. In his brief, he focuses on all of his behavior that occurred prior to his treatment in the Montana State Hospital. And in his petition, he simply said that the council should have gotten his mental health records from Idaho. He didn't say anything else about that. He didn't say anything about the trial or anything. He just talked about the records. Correct. He talked about the mental health records, which the record demonstrates that he was in the jail in Idaho on May 1st, and he was transferred from that jail on May 11th. It suggests that he was never sent to the Idaho State Hospital. The only record that Mr. Shruth has relied on to argue that he was sent to the Montana State Hospital is a letter from one of the psychiatrists who examined him on May 1st, and she writes that she believes he was later sent to the Idaho State Hospital. But she also states that she was not involved in his case after May 1st. Mr. Shruth himself has stated that he was never psychiatrically hospitalized before his time in the Montana State Hospital. So the record does indicate that there were no Idaho mental health records. Excuse me, counsel. I'm sorry to interrupt you, but I want to go back to something you said earlier, which is that he doesn't allege that he had any problems after he was released from the Montana State Hospital. I'm looking at page 108 of the excerpts, volume 2, where he says there was evidence before the court regarding petitioner's behavior, medications, and memory problems, sufficient to raise a reasonable doubt as to petitioner's ability to assist counsel, despite the Montana State Hospital report to the contrary, which I read at least potentially as referring to even though he got out of the state hospital, he was still in the state hospital. Why couldn't you read that as covering the period of time during the trial? I'm looking at 108 and 109. Yes, Your Honor. It could be read that way. It's very vague and does not specify. It's pro se, right? So if it could be read, if it could reasonably be read to cover the time during the trial, it would be a reasonable doubt. But if it could be read to cover the time of the trial and that it was, and he talks about the judge's responsibility to be alert to the petitioner's mental state and counsel's requirement to be alert to that, if it can be read to cover the time of the trial, why don't we have to read it that way for the purpose of evaluating whether a response should have been required? His, I guess we could read it that way. He certainly, he does not provide any specifics to say when he exhibited any of these problems. All the specific acts he talks about later in his brief are things that occurred prior to his treatment. And we do need to look at the record from the Montana State Hospital indicating that he was treated and he was released and that is sufficient to say that he was treated and he was released. And we do need to support the district court's conclusion that Mr. Shreves did not state any facts that point to a real possibility of constitutional error, which is what is required by Rule 4. Regarding Mr. Shreves' argument about the mental health records from Idaho, I do not believe that Mr. Shreves' argument about the mental health records from Idaho is true. I'd also like to note that he insisted repeatedly throughout the trial that he was innocent and was not there, was not present. So even if his attorney had the records from, even if records had existed and had suggested perhaps some defense of mental disease or defect, Mr. Shreves himself did not want that defense to be relied on. He argued that he was actually innocent and was not present. But he also argues in his petition specifically that his mental state could be a matter of mitigation for a sentencing decision as an alternative to being innocent. So is that potentially correct? He does mention that possibility, and that vague claim is not sufficient because what we have to look at here is whether or not the either prong of the strickland test could have been met. And I don't think that Mr. Shreves' argument about the mental health records from Idaho is true. I think that Mr. Shreves' argument about the mental health records from Idaho is true. Excuse me, I lost my train of thought. So you're looking at the strickland? Yes. And the habeas double deferential standard? Yes. When you're assessing whether or not the pleadings are? Exactly, Your Honor. Yes. And I can see I'm out of time, so I will conclude. None of Shreves' claims present a real possibility of constitutional error. Therefore, the district court correctly dismissed his petition under Rule 4. Thank you, counsel. Mr. Ness, you have quite a bit of rebuttal time remaining, if you want it. Your Honor, Judge Graber, you pointed out page 108, and even above that, I think there's even a clearer allegation regarding his ability to participate in the courtroom proceedings. It says about the second full paragraph there, that his alternating states of sedation and agitation made it difficult to assist his attorney in preparation of his defense and concentrate on pre-trial interviews and or courtroom proceedings. Now, the state has argued that his choice of defense, i.e. that he didn't do it, that he's factually innocent, wouldn't have involved his particular mental state at the time. And they used that then to go into the strickland standard and argued that there couldn't have been any ineffective assistance at counsel. But I think that argument gets somewhat circular in that his argument was not only that there may have been an insanity defense, but also that he was incompetent to proceed. Did he testify at trial? I don't believe he did. I thought the opposing counsel said he doesn't. We don't know, do we? We don't have the state trial court record. Right, right. I have it, and I have it at my office. I don't believe he did. I can double check that. But again, it's not in this record. But again, the state's argument gets somewhat circular in that he also argues that he was incompetent to, he also alleged that he was incompetent to participate adequately in his defense. For example, on page 106 of the excerpts in his petition, he alleged that he had problems with concentration that impaired and affected the functions of his brain, including abstract thinking, judgment, analytical thinking, and caused him to be drowsy. And that this affected his ability to discuss the case and make judgments concerning it. Was it the same counsel who had previously brought to the court's attention the lack of competency that would eventually represent him at trial? It was when he first came to Montana as the attachments. I mean, it was subject to newspaper articles. He was, to use a colloquial term, crazy. And so she did, and he was sent to the Montana State Hospital. But remember, he was discharged from there in August, and trial didn't start until December. But if it was the same attorney, and this attorney had previously noticed problems and brought it to the attention of the court, it would stand to reason that if there were some difficulties later, that the attorney would have brought it to the attention of the court again. And I would just suggest, Judge Rawlinson, that may or may not be true, but without reviewing the state court record and relying just solely on the attachments to his briefs, I don't think that we can conclusively answer that question. And that's why this case should be remanded. Thank you. Thank you, counsel. We appreciate the helpful arguments of both counsel. The case just argued is submitted.
judges: Tashima, Graber, Rawlinson